Mansfield Collins, SBN.104049
**LAW OFFICES OF MANSFIELD COLLINS**
100 N. Barranca St., 7th Fl.
West Covina, CA., 91791
213-384-0982
866-333-2045 Fax
Mansfield.collins@mansfieldcollinslaw.com

Attorneys for Defendant
MATTHEW SULLENGER

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW SULLENGER,<br><br>Defendant. | No. CR 8.18-00010-SVW<br><br>**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE INTRODUCTION OF STATEMENTS FROM FBI INTERVIEW** |

## I. INTRODUCTION

Defendant Matthew Sullenger, by and through counsel, respectfully moves this Court to exclude the introduction of statements made during his FBI interview. The statements, obtained without proper safeguards, violate Mr. Sullenger's constitutional rights under the **Fifth and Fourteenth Amendments**, lack relevance to the remaining charge, COUNT 7 under **Federal Rule of Evidence 401**, and fail to meet evidentiary standards under **Rules 403, 602, and 106**. This motion is supported by the following memorandum of points and authorities.

This motion is supported by the following memorandum of points and authorities, which references specific statements from the interview transcript.

## II. FACTUAL BACKGROUND

On December 26, 2024, the defense was provided with a redacted FBI agents interview of Mr. Sullenger at his residence regarding allegations of possession of child pornography. This interview was the basis of the original indictment, count 7 was not charged.

FBI agents questioned Mr. Sullenger at his residence regarding allegations related to child pornography. The interview primarily focused on accessing and downloading material from online platforms such as Playpen, which formed the basis of Counts 1 through 6. However, these counts have

since been dismissed. The remaining charge, Count 7, is based solely on material found on an external hard drive (secondary storage device). The external hard drive was never mentioned during the interview, and no questions or responses address its role in the alleged offense.

This interview has nothing to do with count 7. Count 7 was never charged in the original indictment. Despite repeated denials, the government seeks to introduce portions of the interview to suggest guilt about counts 1 to 6 which were voluntarily dismissed by the government. This is a way for the government to attempt to use evidence of dismissed counts to confuse the jury that this evidence is relevant to count 7. There is no FBI question or reference or no answer or reference at all to an external hard drive in this interview. Count 7 is based solely on an external hard drive.

### III. ARGUMENT

#### A. The Statements Lack Relevance to Count 7

The FBI interview is irrelevant to Count 7 because the agents did not question Mr. Sullenger about the external hard drive or any secondary storage device. Instead, the questions focused on speculative online activity tied to now-dismissed Counts 1 through 6. Under **Federal Rule of Evidence 401**, evidence is relevant only if it makes the existence of a fact of consequence more or less probable. Statements that do not pertain to the alleged conduct involving the external hard drive fail this standard.

Evidence that is unrelated to the charged offense lacks relevance and must be excluded (*United States v. Hitt*, 981 F.2d 422, 423 (9th Cir. 1992)). The Ninth Circuit in *Hitt* held that evidence must directly support an element of the charged crime to be admissible.

Evidence tied to dismissed charges cannot be used to bootstrap relevance to remaining charges. In *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995), the Ninth Circuit warned against using prejudicial evidence from unrelated conduct to bolster the prosecution's case.

#### B. The Government's Use of the Evidence of the Dismissed Counts to Bolster Their Case Is Improper Lacks Relevancy to Count 7

There is no reference at all to an external hard drive in this interview. Count 7 is based solely on an external hard drive. The government improperly relies on evidence tied to dismissed Counts 1–6 to confuse the jury in support of count 7. This is a violation of the principles established in United States v. Hinkson, 585 F.3d 1247 (9th Cir. 2009), which prohibits the use of dismissed charges to prejudice the defendant in ongoing litigation.

There is no reference at all to an external hard drive in this interview. Count 7 is based solely on an external hard drive. Therefore, evidence tied to dismissed counts lacks probative value for Count 7 and risks confusing the jury with irrelevant allegations.

### C.   B. Lack of Connection Between Interview and External Hard Drive

The government has failed to demonstrate any link between the FBI interview and the external hard drive central to Count 7. The agents' questions primarily addressed online behavior, file-sharing platforms, and general computer use. No questions were asked, and no responses were provided, about secondary storage devices or their alleged role in the offense.

Evidence must establish a nexus to the charged conduct to satisfy relevancy requirements under **Rule 401** (*United States v. Reyes*, 18 F.3d 65, 69 (9th Cir. 1994)). The court in *Reyes* excluded evidence that was tangential and failed to connect directly to the remaining charge.

### D.   Prejudicial Impact of Introducing Irrelevant Statements

Even if the Court finds some relevance in the interview, its probative value is substantially outweighed by the risk of unfair prejudice, confusion, or misleading the jury under **Federal Rule of Evidence 403**. The government's reliance on speculative questions and responses tied to dismissed charges risks conflating unrelated conduct with the remaining allegation.

The Ninth Circuit has consistently held that irrelevant and prejudicial evidence must be excluded to ensure a fair trial (*United States v. Haischer*, 780 F.3d 1277, 1282 (9th Cir. 2015)).

### E.   The Statements Were Not Voluntary

The statements were obtained through coercive and suggestive questioning, rendering them involuntary and inadmissible under the Fifth Amendment. The agents created an environment of psychological pressure by exploiting Mr. Sullenger's nervousness and lack of technical sophistication.

Statements must be voluntary to be admissible. Coercion, intimidation, or undue influence renders statements involuntary (Doody v. Schriro, 596 F.3d 620, 647 (9th Cir. 2010)).

Page 10:

```
00:37:52.924    11  Okay. So, have you gone searching for
00:37:58.651    13  [Pause]
00:38:01.803    14  SW: Are your computers gonna reflect that? And
00:38:04.395    15  you've had that computer since March; is that
00:38:06.331    16  correct? And nobody else uses it?
00:38:08.906    17  MS: Well, we, uh, upgraded it recently.
```

Page 11:

```
00:39:49.062     12  like (pause) just, just a random assortment of
00:40:02.229     13  different things.
00:40:03.110     14  SW: Uh uh.
00:40:03.301     15  MS: And I kind of went there sometimes.
00:40:06.486     16  SW: Okay.  I'm talking about a very specific
00:40:08.566     17  message board, where people would post pictures
00:40:12.006     18  or videos of child pornography, or links to other
00:40:15.670     19  pages that have child pornography.  It would be
00:40:17.702     20  very, very clear.  This wouldn't be a variety or
00:40:20.901     21  an assortment of pornography.  Okay.  Um, (pause)
00:40:29.573     22  pacifier ring a bell?  No?  How about beetlos?
00:40:35.414     23  B-e-e-t-l-o-s?  Does that mean anything to you?
00:40:37.286     24  Nothing at all?
00:40:39.206     25  [Pause]
```

These speculative terms lack evidentiary support and cannot serve as the foundation for a substantive case against Mr. Sullenger.

```
00:40:44.712 00022:  01  LT: Hey, Matt.  We're here doing this in private.
00:40:52.908          02  After a while, when we get through verything,
00:40:55.843          03  it's not gonna be private.
00:40:59.316          04  SW: We're just trying to give you as many chances
00:41:00.532          05  right now because once we walk through that door,
00:41:04.164          06  they don't exist anymore.  That make sense?  Are
00:41:09.605          07  you ready to walk through the door?  Nothing else
00:41:12.788          08  that we should be concerned about?
00:41:18.581          09  LT: Matt, you need to think very hard.  You keep
00:41:25.332          10  rolling your eyes and doing all this.  Okay.
00:41:29.668          11  SW: You appear very nervous to me and.
00:41:31.333          12  MS: Well I'm just, I'm cold.
00:41:33.061          13  SW: No, from the get go, when we were standing
00:41:34.420          14  outside.
00:41:35.220          15  MS: I have asthma, I haven't gotten a job.  I've,
00:41:40.147          16  I just.  I went running yesterday and my knees
00:41:44.245          17  are weak
```

Page 13:

```
00:46:57.185          05  SW: But I'm still just trying to figure out why
00:46:58.784          06  you would be so nervous.  From the get go.  From
00:47:00.529          07  seeing us.  As soon as you saw us you were
00:47:02.544          08  nervous.
00:47:04.337          09  MS: Well, yeah.
```

```
00:47:04.640        10  SW: And it's hard for me to believe - - right, but
00:47:07.152        11  nobody else appeared to be.  Your mom, again, for
00:47:09.057        12  different reasons.  But nobody else appeared to
00:47:10.417        13  be.  You appeared - - you had that look.  We've
00:47:12.626        14  been doing this for a while.  You had that look
00:47:14.240        15  of, oh shit, they're here.  They found out.
```

Page 13:

```
00:47:10.417     13  be.  You appeared - - you had that look.  We've
00:47:12.626     14  been doing this for a while.  You had that look
00:47:14.240     15  of, oh shit, they're here.  They found out.
00:47:17.970     16  That, to be honest with you, that's the look you
00:47:20.257     17  had.  Like you were hiding something, and it's
```

The agents repeatedly focused on Sullenger's nervousness, equating it with guilt, which undermined the voluntariness of his responses. This question pressured Sullenger to address speculative allegations without evidence, creating undue psychological pressure to explain himself.

This accusatory question improperly pressured Sullenger to disprove speculative claims, violating due process protections against coercive interrogation tactics.

**F.      Miranda Warnings Were Not Provided**

If the Court finds the interview to be custodial, the absence of Miranda warnings renders the statements inadmissible. Miranda warnings are required for custodial interrogations (United States v. IMM, 747 F.3d 754, 766 (9th Cir. 2014)).

Page 14:

```
00:49:30.778     10  MS: I don't know.  I don't know what else to tell
00:49:32.553     11  you.
00:49:34.218     12  SW: Okay.  And that's an acceptable - - as long as
00:49:35.657     13  it's the truth, that's an acceptable answer.  I
00:49:38.425     14  just wanna make sure that we're all on the same
00:49:40.121     15  page and we're clear.
00:49:41.498     16  MS: You guys are making me think like I need to
00:49:42.665     17  say more.
00:49:44.617    18  SW: No.
00:49:45.258     19  LT: No.
00:49:45.785     20  SW: We just want the truth.  If that's it, that's
00:49:48.090     21  fine.  We can go back inside.  Totally fine.  I
00:49:50.154     22  just want you to understand that it needs to be
00:49:53.289     23  the truth.  Not, we want it to be the truth, it
00:49:55.865     24  needs to be the truth.  Okay? So we're on the
00:49:59.913     25  same page.
```

5

1  00:50:00.728 00029:01 MS: Yeah. Yep.

The agents' authoritative tone and repeated control over the conversation effectively created a custodial environment without proper advisements of rights. The agents' line of questioning created an environment where Mr. Sullenger felt compelled to explain himself, further demonstrating a custodial atmosphere requiring Miranda warnings. The repeated questioning about his computers—despite denials—pressured Sullenger into responding in a manner consistent with a custodial interrogation.

### G.  The Probative Value Is Substantially Outweighed by Prejudicial Effect

The government improperly relies on evidence tied to dismissed Counts 1–6 to support count 7. This is a violation of the principles established in United States v. Hinkson, 585 F.3d 1247 (9th Cir. 2009), which prohibits the use of dismissed charges to prejudice the defendant in ongoing litigation.

There is no reference at all to an external hard drive in this interview. Count 7 is based solely on an external hard drive. Therefore, evidence tied to dismissed counts lacks probative value for Count 7 and risks confusing the jury with irrelevant allegations.

The agents' speculative and ambiguous questions, combined with Sullenger's vague or unclear responses, pose significant risks of prejudice and jury confusion. Evidence must be excluded if its probative value is outweighed by its prejudicial impact under Rule 403 (United States v. Haischer, 780 F.3d 1277, 1282 (9th Cir. 2015)).

Page 10:

```
00:37:52.924     11  Okay.  So, have you gone searching for
00:37:57.163     12  specifically child pornography?
00:37:58.651     13  [Pause]
00:38:01.803     14  SW:  Are your computers gonna reflect that?  And
00:38:04.395     15  you've had that computer since March; is that
00:38:06.331     16  correct?  And nobody else uses it?
00:38:08.906     17  MS:  Well, we, uh, upgraded it recently.
00:38:13.347     18  SW:  But you've had that machine?
00:38:14.876  19 MS: [UI].
00:38:15.052     20  SW:  Like what did you upgrade, like the RAM?
00:38:16.589     21  MS:  Um, RAM, the video card, the CPU, the case.
00:38:28.125     22  That's it.
00:38:28.699     23  SW:  Okay, but not the hard drive.
00:38:29.325     24  MS:  And [UI] towers.
00:38:30.582     25  SW:  But not the hard drive?  Okay.  So when they
00:38:32.790 00020:01 image that dand carve everything out, they're not
00:38:35.014     02  gonna see - - and they get everything.  They get
```

```
00:38:36.789      03  internet history.  They're goin, you know, and
00:38:38.805      04  you say you don't even know what Tor is?  Come
00:38:40.918      05  on.  A sophisticated gamer like yourself and all
00:38:46.517      06  the chatrooms and porn.

00:39:18.934      24  SW: Okay.  This is your last chance.  When you go
00:39:22.533      25  back in you don't get to raise your hand and say,
00:39:24.566 00021:01  oh, oh, oh, wait.  I wanna change my mind and.
00:39:26.981      02  LT: Yeah, and then you can't come back and say, oh
00:39:28.854      03  I didn't know that lying to federal agents was,
00:39:30.982      04  you know, [UI].  I didn't know it was [UI] 'cause
00:39:36.246      05  we've told you.
```

The accusatory nature of this question pressures Mr. Sullenger to defend against speculative allegations. Mentioning a non-criminal site could prejudice the jury by implying wrongful behavior without substantive evidence.

### H. Pause Statements Taken Out of Context

The pause portions of the interview, as noted, fail to provide a complete and accurate narrative, unfairly distorting Mr. Sullenger's responses. Of the 16 identified pauses, 14 are attributed to Mr. Sullenger, raising significant concerns about the reliability and interpretation of his statements. Under **Federal Rule of Evidence 106** and the principles articulated in **United States v. Vallejos, 742 F.3d 902, 905 (9th Cir. 2014)**, evidence must be presented in a manner that ensures its full context is understood, particularly when pauses or unclear portions could lead to misinterpretation. The FBI agents recorded this interview, and the technology should have captured verbal cues, such as "uh uh" or partial words, which may indicate hesitation, confusion, or denial. By failing to account for these nuances, the government risks misleading the jury with incomplete or decontextualized statements, violating Mr. Sullenger's right to a fair trial. This incomplete recording and reliance on ambiguous pauses render these portions inadmissible.

## IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court exclude the introduction of Mr. Sullenger's FBI interview in its entirety.

Dated. January 3, 2025

Respectfully submitted,

*Mansfield Collins*

MANSFIELD COLLINS
Attorney for Defendant
MATTHEW SULLENGER